## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

Leslie Czemerda
_____

915 Shoreline Drive W #112
_____

Sunset Beach, NC 28468
_____
*(Full name and address of the plaintiff)*
**Plaintiff(s)**

vs.

Barcoding, Inc
_____

2220 Boston Street
_____

Baltimore, MD 21231
_____

_____

_____
*(Full name and address of the defendant(s))*
**Defendant(s)**

\*      · 2011 NOV 14  A 10: 26 ·

CLERK'S OFFICE
AT BALTIMORE

BY_____  ___DEPUTY

Civil No.: CCB 11 CV 3244
*(Leave blank.  To be filled in by Court.)*

\*      \*      \*      \*      \*      \*
\*\*\*\*\*\*

## COMPLAINT

1.      Jurisdiction in this case is based on:

☑      Diversity (none of the defendants are residents of the state where plaintiff is a resident)

☑      Federal question (suit is based upon a federal statute or provision of the United States Constitution)

☐      Other (explain) _____

_____

_____

Complaint (Rev. 12/2000)                    1

2.      The facts of this case are:

See Attached Exhibit A. "Statement of the Facts", which is incorporated by reference as

though fully set forth herein.

3.   The relief I want the court to order is:

☑   Damages in the amount of:  At least $360,000 _____

☐   An injunction ordering: _____

_____

☑   Other (explain) cost, attorney fees and other damages as provided by law. _____

I hereby request a trail by jury. _____

11-10-11 _____
(Date)

*Leslie Czmerda*

(Signature)

Leslie Czemerda _____

915 Shoreline Drive W #112 _____

Sunset Beach, NC 28468 _____

910-579-7273 _____
(Printed name, address and phone number of
 Plaintiff)

**Privacy Rules and Judicial Conference Privacy Policy**

Under the E-Government Act and Judicial Conference policy, any paper filed with the court should not contain an individual's social security number, full birth date, or home address; the full name of person known to be a minor; or a complete financial account number. These rules address the privacy concerns resulting from public access to electronic case files.

Exhibit A
"Statement of the Facts"


I.      I was hired by Respondent, which is headquartered in Baltimore, Maryland, in December of 2009 to the position of Account Manager for the Southeast Region. I currently hold this position, reporting to Frank Miller, Manager, who in turn reports to Jay Steinmetz, President and Chief Executive Officer. I reside in North Carolina but work in Baltimore as needed. Throughout my employment with Respondent, I have performed my job functions in a highly competent manner and have never been warned of poor performance.

II.     I believe that I have been subjected to sexual harassment on the basis of my gender (female) and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Maryland Civil Rights Code and the North Carolina Equal Employment Practices Act in that:

1.     Not even one month into my new position, I began being subjected to blatant sexual harassment by a member of Barcoding's senior management team, Kenneth Currie, Director of Business Development and Marketing.

Czemerda v. Barcoding, Inc.
Page 2

2.      In late January of 2010, I attended a Company-sponsored dinner. My supervisor, Mr. Miller, Mr. Currie and several colleagues were in attendance. Mr. Currie arrived at the dinner meeting late and was clearly intoxicated. He then proceeded to: take the chair next to me; physically pull my chair close to his; put his arm around me; touch my arm and my leg; and repeatedly whisper in my ear throughout the dinner. When the dinner ended, the male executives left to "go out." Thereafter, I drove home with a colleague, Brenda Mikesell, Account Manager, who commented that Mr. Currie was "all over [me]."

3.      I complained to Mr. Miller regarding Mr. Currie's conduct. Unfortunately, Mr. Miller failed to appropriately address my concerns and instead advised me that Mr. Currie had a great deal of influence over me and Mr. Steinmetz, the President and CEO, and as a result, I needed to "stay on [Mr. Currie's] good side" and "just try to avoid him."

4.      In February of 2010, I returned to Baltimore for work and, as required by company policy, stayed at a condominium owned by Barcoding. I was extremely uncomfortable staying over at the condominium based on having heard there had been a number of parties held there where upper-level management, including Mr. Steinmentz and Mr. Currie had been in attendance, where there was allegedly drug use and sexual activities with different women. That evening, Mr. Currie called and asked to come to the condominium to have breakfast with me; I declined.

5.      Over the next several months, I did not work with Mr. Currie as frequently as I had previously, however, he continued to act inappropriately towards me through several phone calls. By way of example, Mr. Currie left messages to the effect of: "You must think I'm a stalker;" and "I'm glad you didn't answer last night, as I got pretty drunk and who knows what would have happened."

6.      After receiving a number of these inappropriate messages, I again complained to Mr. Miller. I was again discouraged from pursuing my complaints any further and nothing was done to address the behavior.

7.      Beginning in August of 2010, I became responsible for an increased number of accounts and consequently began working with Mr. Currie on a frequent basis. After that time, the sexual harassment escalated significantly.

8.      Mr. Currie has repeatedly called me while he is on the road. On or about August 9, 2010, Mr. Currie called me from Atlanta and told me I should "come down and party with [him]."

9.      Mr. Currie called me from Fort Lauderdale, Florida and proceeded to tell me that, after thinking about the most important thing to him, himself, he was thinking about me and that I should be joining him on some of his trips.

Czemerda v. Barcoding, Inc.
Page 3

10.     On September 22, 2010, I called Mr. Currie to discuss an unresponsive vendor. I began the conversation with "I need your help," Mr. Currie responded, "although I have given up my gynocological practice, I would still be willing to fit you in for a pap smear while you're in Baltimore next week." I immediately called Mr. Miller and advised him of Mr. Currie's comment. In response, Mr. Miller claimed he would speak with Mr. Currie and keep him away from me, but the sexual harassment only continued.

11.     On or about September 29, 2010, I attended a team building event for the sales team at a bowling alley at which Mr. Currie was in attendance and again behaved inappropriately towards me. When Mr. Currie went to leave, he came over to where I was sitting, placed his hands on my thighs and told me he was leaving but to call I needed him.

12.     On or about October 6, 2010, Mr. Currie called me from the airport on the way to a meeting in Greenville, SC and suggested that he blow off the meeting and drive to my home so he could "hang out with [me]" at the beach.

13.     On October 7, 2010, I was on a telephone conference with Mr. Currie and two colleagues from a partner called Countermind. When the partner from Countermind offered to do a portion of an RFP, Mr. Currie said to "thank him," he would fly the partner out to Vail and give him a "blow job."

14.     Other co-workers and customers are aware of Mr. Currie's behavior and have faced similar issues. By way of example:

        a)     I was warned early on by Ms. Mikesell that Mr. Currie "hits on anything that moves;"

        b)     I was told by a co-worker that Mr. Currie had relayed a story to a colleague about watching his sister having sex with one of his friends and then publicizing it to a number of people;

        c)     I heard about a conversation in which Mr. Currie suggested that the way a co-worker could get fired would be to say something derogatory to the woman that was standing next to him and that Mr. Currie would "help [him] do it;"

        d)     According to one vendor, Mr. Currie recently invited the vendor to his room to pick something up and the vendor was faced with an apparently naked woman in Mr. Currie's bed; and,

        e)     Other vendors have told stories of being taken out by Mr. Currie and observing him drink excessively and hit relentlessly on women. In several instances, vendors felt compelled to apology to the women around them.

Czemerda v. Barcoding, Inc.
Page 4

15.     I have additionally been subjected to sexual harassing and inappropriate conduct by Mr. Steinmetz, President and CEO. On February 24, 2010 at a meeting in Raleigh, North Carolina, Mr. Steinmetz was drinking heavily, repeatedly using the "f" word, and telling stories to business colleagues about inappropriate conduct in college. The following day, I was advised that it was my responsibility to keep Mr. Steinmetz away from customers and to call Mr. Miller if I needed assistance in doing that.

16.     On September 22, 2010, I was in attendance at an evening sales event during which Mr. Steinmetz said in front of a vendor that I, "smelled good" and then asked if he could "smell [me] more and more." I walked away but, Mr. Steinmetz continued to follow behind me for some time.

17.     After making my complaints to Mr. Miller, there were a number of issues related to my compensation which seem to be in retaliation for my complaints to Mr. Miller and/or my rejection of the advances of management. Specifically, there were changes to my quota and commission monies were not paid in a timely manner.

18.     On October 11, 2010, my legal counsel sent a letter to Respondent ("Complaint Letter") detailing my belief that I have been subjected to sexual harassment and retaliation.

19.     Soon after my Complaint Letter, I attended a meeting in Florida where Mr. Currie was in attendance. I was told by colleagues that Mr. Currie had been passing around photos of women in bikinis from a recent trip to South Beach and talking about his escapades there.

20.     Shortly after my Complaint Letter, Respondent undertook an investigation, conducted at least in part by a former employee, and I was questioned extensively regarding the bases of my claims. I was not told which other persons were or were not interviewed. After the investigation, I was advised that the company took disciplinary action against Mr. Currie. I have not been advised of any disciplinary actions being taken against Mr. Steinmetz.

21.     Mr. Currie has been permitted to remain employed, and I have not been advised of the specific disciplinary action taken against him even though: 1) I am aware that the aforementioned "blow-job" comment to a vendor was verified; and 2) I am aware of at least one employee verifying to Respondent certain of my allegations.

21.     Since my Complaint Letter, I have been subjected to retaliation in that:

a)     My supervisor, Mr. Miller, infrequently interacts with me and fails to respond to me in a timely manner;

b)     I have been directed to split certain commissions with Ms. Mikesell which I was not previously advised to split; and,

c)     I have felt generally alienated from co-workers and managers.

PHIL1 1305107-1

III.     For the reasons set forth above, I believe I have been subjected to sexual harassment and retaliation in violation of Title VII, the Maryland Civil Rights Code and the North Carolina Equal Employment Practices Act

11-10-11

*Leslie Czemerda*

Leslie Czemerda
915 Shoreline Drive W #112
Sunset Beach, NC 28468
910-579-7273